# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WALTER MAY, II**, | : | **CIVIL ACTION NO. 1:07-CV-1787** |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **P.A. JONES**, | : | |
| Defendant | : | |

## MEMORANDUM

Walter May, II ("May"), a Pennsylvania state inmate who, at all times relevant, was incarcerated at the State Correctional Institution at Camp Hill (SCI-Camp Hill), filed this civil rights complaint (Doc. 1) alleging that Ronald Jones, a physician's assistant, was deliberately indifferent to his serious medical needs in violation of the eighth amendment. Presently before the court are cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docs. 97, 111.) For the reasons set forth below, plaintiff's motion (Doc. 97) and defendant's motion (Doc. 111) will be denied and the matter will be set for trial.

**I.    Statement of Material Facts**

May began suffering from migraine headaches in 1995.[1] (Doc. 112-3, Deposition of Walter May, II ("May Dep."), at 6, pp. 11-12.)  At times, it has been necessary for him to go to the emergency room for shots of Toradol.[2]  (Id.)  He has been receiving pain treatment for headaches on an as needed basis from the Department of Corrections ("DOC") for almost ten years.  (Id. at 12, p. 36.)[3]

While imprisoned at SCI-Camp Hill, May was classified as a Level 5 inmate and housed in the Special Management Unit ("SMU").  (Doc. 112-3, May Dep., at 7, pp. 15-16; at 8, p. 19).  On May 27, 2007, he began experiencing pain, vomiting, loss of appetite, light sensitivity and an inability to sleep, all of which were exacerbated by the conditions in the SMU.[4]  (Doc. 112-3, May Dep. at 11, pp. 32-33.)  He had no access to the commissary or to pain relievers such as Ibuprofen or Motrin.  (Doc. 112-3, May Dep. at 8, pp. 18-19.)  On May 29, 2007, he submitted a request for sick line request.  (Doc. 100, Declaration of Walter May, II (May Decl.), at 4, ¶ 3.)

---

[1] A migraine is defined as an extremely severe paroxysmal headache, usually confined to one side of the head and often associated with nausea; hemicrania. http://dictionary.reference.com/browse/migraine

[2] "Toradol is sometimes used in injectable form for emergency treatment of severe Migraine."  See http://www.migraines.org/treatment/pro_tora.htm

[3] Defendant does not dispute that May had a history of migraine headaches. He does, however, dispute that May was suffering from headaches in the months immediately preceding this incident.  (Doc. 112-2, at 15-29.)

[4] According to plaintiff "all they do [in the SMU] is kick the doors and scream all day."  (Doc. 112-3, May Dep. at 11, p. 33.)

Although he did not recall being seen (Doc. 112-3, May Dep. at 11, p. 32), defendant Jones entered the following remark into his medical file on May 29, 2007:

> Seen for sick line today. Despite many warnings to fill out sick line request, he has again submitted altered form. Was given form back and copy put on chart. Told we [sic] will be seen when he stops crossing out charge areas. Told we will be happy to see him when he submits properly completed sick call form.

(Doc. 112-2, at 20.) He indicates that he signed up for sick call three times during the week at issue and was denied all three times by defendant Jones. (Doc. 100, May Decl, at 3, ¶ 5.) According to the record, on May 29, and May 30, 2007, May was seen for sick call but was not treated because he refused to complete and sign the medical cash slip. (Doc. 112-2, at 21.) Defendant Jones informed him that he would be treated when he completed the required paper work. (Id.) May indicated that he understood the instructions. (Id.) On June 4, 2007, a properly completed cash slip was submitted, so he was seen during sick call. (Doc. 112-2, at 21.) Jones inquired how May was feeling and he responded "I'm good, good" and refused services. (Doc. 112-2 at 21.) Although he has no recollection of this conversation with defendant Jones, he acknowledges that it was around this time that he correctly completed the cash slip. (May Dep., Doc. 112-3, at 15, p. 47.) He was also seen by defendant Jones on June 7, 2007. (Doc. 112-2, at 21). He requested, and was prescribed, Tylenol and a multivitamin and an Oscal prescription was renewed. (Id., at 21, 27.) As a result of defendant's conduct, May states that he "was forced to suffer in pain for a total of eleven days after P.A. Jones was first made aware of [his] condition, because of his refusal to treat [him]." (Doc. 100, May, Decl, at 5, ¶ 6.)

3

He filed a grievance on May 30, 2007, complaining as follows:

> On 5/29/07 I signed up for sick call and pa Jones brought my sick call slip to me and said since I refused to authorize him to take money from my account he wouldn't treat me for severe pain in my head or refill my medication to help with the pain. The pain was so bad I was throwing up couldn't sleep and could not stand light. I am still in pain and being refused treatment.

(Doc. 112-2, at 36.) May received the following response to his grievance:

> I have read your chart and PA Jones['] comments. You are not to alter the sick call form or the cash slip. You may not cross out the charges on the sick call slip or cash slip. It is not for you to decide if you are charged for a visit. The PA in conjunction with the DOC regulations determines the charges for the sick call visit. Please understand that even if you do not sign a cash slip, but are treated, you will be charged for the visit. This is in accordance with DOC policy.

(Id. at 35.) In his appeal to the facility manager, May contends that the grievance officer failed to address the issue of refusal of treatment. He states that he "was in severe pain from a serious medical condition and [ ] was refused medical treatment because [he] refused to pay $4.00. . . ." (Id. at 34.) The appeal was denied for the reasons set forth below:

> Based on my review you were informed of the process of Sick Call and that you had to sign a Sick Call slip in order to be examined. You refused to sign the slip and/or altered it thus indicating your refusal to comply with the orders/procedures for obtaining Sick Call. As you refused to comply, you were not examined. Sick call, Mr. May, is like any other process in the Department of Corrections. Failure to comply with the process for accepting Sick Call, like yards, showers, and meals, results in you not been [sic] seen.
>
> As you refused to comply with procedure, you were not examined. As the SMU staff members make rounds in the Housing Unit and can summon the Medical Department in the event you required emergency treatment, I find your appeal is denied.

(Id. at 33.) He then pursued the appeal to final review. On August 24, 2007, he was informed that his appeal was denied as follows:

> A review of the record shows that you refused to sign the authorization form to have money deducted from your account for non-emergency medical services. The Department of Corrections policy DC-ADM 820 Co-Payment for Medical Services states that non-emergency medical services shall not be provided to an inmate who refuses to sign an authorization form. There is no evidence of neglect or deliberate indifference by the medical staff of SCI Camp Hill to your medical concerns.

(Id. at 32.)

## II. Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

**III.   Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, as is alleged here, a plaintiff must establish that defendant acted "with deliberate indifference to his or her serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). There are two components to this standard: First, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious. Additionally, the plaintiff must make a "subjective" showing that defendant acted with "a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002).

A. Deliberate Indifference

The Third Circuit Court of Appeals specifically found deliberate indifference to exist when: (1) a prison official knows of the prisoner's need for treatment but intentionally refuses to provide it; (2) the prison official delays necessary medical treatment for non-medical reasons; or (3) the prison official prevents a prisoner from receiving needed or recommended treatment. Rouse v. Plaintier, 182 F.3d 192, 197 (3d Cir. 1999) (citations omitted).

With respect to the first scenario, it is not entirely clear whether defendant was aware that May was in need of treatment for a migraine headache because a copy of the sick call request form, which would confirm whether he requested treatment for a migraine headache, is not a part of the record. There are also questions of fact concerning whether necessary medical treatment was denied for non-medical reasons and whether defendant prevented him from receiving needed or recommended treatment. Defendant remarked in May's medical records on May 29, 2007, and May 30, 2007, that no treatment would be provided to May until he properly completed the requisite cash slip form as required by Department of Corrections ("DOC") policy DC-ADM 820 Co-Payment for Medical Services. . (Doc. 112-2, at 20-21.) However, during the grievance procedure, May was informed that even if an inmate does not sign a cash slip, but receives treatment, he is still charged for the treatment pursuant to the DOC policy. (Doc. 112-2, at 35.) This seems to suggest that a properly completed cash slip is not necessary to obtain treatment. This is also May's understanding. He indicates that the only way he can

7

be denied treatment is if he completes a refusal of treatment form, which he did not do. (Doc. 112-3, May Dep. at 10, p. 29.) He states that if he fails to sign the cash slip form, he still receives treatment and the money is taken from his account. (Id.) Yet, in the final appeal decision, it is represented that "non-emergency medical services *shall* not be provided to an inmate who refuses to sign an authorization form." (Doc. 112-2, at 31) (emphasis added). Notably, defendant failed to submit a copy of the DOC policy in effect at the time and the policy available on the DOC website is inapplicable because it did not become effective until May 2008. Also, May indicates in a reply brief that defendant refused to produce a copy of the DOC policy during discovery. (Doc. 130.) Clearly, there are factual issues concerning deliberate indifference which precludes summary disposition of this matter.

  B. <u>Serious Medical Need</u>

Defendant argues that May has failed to establish that he suffered from a serious medical need and that he is unable to do so without expert medical testimony. (Doc. 112, at 6, citing <u>Boring v. Kozakiewicz</u>, 833 F.2d 468 (3d Cir. 1987). May counters by arguing that defendant's reliance on <u>Boring</u>, 833 F.2d 468, is misplaced and that "this Honorable Court made a ruling on January 22, 2009, that the Plaintiff has met the threshold requirement of serious medical need." (Doc. 102, at 3-4.)

The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, when the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or

the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting White v. Napoleon, 897 F.2d 103, 109 (1990); Monmouth County Corr. Inst. Inmates v. Lensario, 834 F.2d 326, 346 (3d Cir. 1987). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)).

As noted by plaintiff, in this court's order of January 22, 2009, it was determined that May's allegations of experiencing "an excruciating migraine headache that was causing the plaintiff to vomit from the pain," and "[t]he pain was so bad the plaintiff couldn't eat or sleep for two days" (Doc. 1, at 2, ¶ 9) were sufficient to meet the serious medical need requirement. (Doc. 88, at 1, ¶ 1.)

Further, expert testimony is only needed to establish a prisoner's case where the medical significance of the objective deprivation is not obvious. Boring, 833 F.2d 468. In Boring, it was argued that defendants were deliberately indifferent to plaintiffs' serious medical needs because they were denied a special diet which alleviated their migraine headaches. Id. at 473. However, because it would not be obvious to a lay jury that the diet afforded to the general population did not meet

the needs of migraine headache sufferers, and because plaintiffs were not qualified as experts in dietetics or medicine, expert testimony was required. In the matter *sub judice*, May testified that his headaches began in 1995 and that it has been necessary for him to go to the emergency room for shots of Toradol. In addition, he has been treated by the DOC with pain medication for his migraine headaches for almost ten years on an as needed basis. Clearly, the medical significance of the deprivation of pain medication for a migraine headache is obvious, especially in light of the fact that May had no access to any type of medicine and was completely reliant on the medical department to meet his medical needs.

C. Physical Injury

Under 42 U.S.C. § 1997e(e), "[n]o federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." This section predicates a prisoner's claim for mental or emotional injury suffered while in custody on a showing of accompanying physical injury. Mitchell v. Horn, 318 F.3d 523, 533 (3d Cir. 2003). Plaintiff seeks relief for "pain, suffering, loss of enjoyment of life, emotional and mental damages, and physical impairments," not solely mental or emotional injury. (Doc. 1, at 4, ¶ 21.) Consequently, defendant's motion for summary judgment will be denied with respect to this issue.

**IV. Conclusion**

Based on the foregoing, plaintiff's motion (Doc. 97) for summary judgment pursuant to Federal Rule of Civil Procedure 56 is denied. Defendant's motion (Doc. 111) for summary judgment pursuant to Federal Rule of Civil Procedure 56 is also denied. The matter will be set for trial at the convenience of the court.

An appropriate order will issue.


        S/ Christopher C. Conner
        CHRISTOPHER C. CONNER
        United States District Judge


Dated:      December 7, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WALTER MAY, II,** : | **CIVIL ACTION NO. 1:07-CV-1787** |
| **Plaintiff** : | **(Judge Conner)** |
| v. : | |
| **P.A. JONES,** : | |
| **Defendant** : | |

## **ORDER**

AND NOW, this 7th day of December, 2009, upon consideration of the parties' cross motions for summary judgment (Docs. 97, 111), and for the reasons set forth in the foregoing memorandum, it is it is hereby ORDERED that the motions are DENIED. The matter will be set for trial at the convenience of the court.

      S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge